UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KRISHELL ROBINSON,<br>Defendant. | Case No. 15-cr-00010-SI-3<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR A WRIT OF AUDITA QUERELA**<br><br>Re: Dkt. No. 496 |

Now before the Court is defendant Krishell Robinson's motion for writ of audita querela or coram nobis. Dkt. No. 496. This motion came on for hearing on April 5, 2019. Defendant asks that the Court vacate her sentence and "re-sentence her with a restitution order that reflects her level of contribution to the IRS's loss and her individual economic circumstances[,]" pursuant to 18 U.S.C. § 3664(h). *Id.* at 13. The government opposes, and defendant has filed a reply brief. Dkt. Nos. 500, 501. For the reasons set forth below, the Court hereby GRANTS defendant's motion for a writ of audita querela and VACATES the sentence imposed on February 17, 2017.

**BACKGROUND**

On January 6, 2015, defendant Krishell Robinson ("defendant") was charged with one count of conspiracy to file false claims against the United States, in violation of 18 U.S.C. § 286, and seventeen counts of making false, fictitious, or fraudulent claims against the United States, in violation of 18 U.S.C. § 287, based on her role in the filing of federal income tax returns that falsely claimed education expenses under the American Opportunity Tax Credit (AOTC). Dkt. No. 1.

Defendant was indicted with co-defendants Josiah Larkin, Ursula Choice, Monica Cobbins, and Thomalyn Virden. Count One of the indictment charged that the defendants, at Larkin's tax

preparation firm, from November 2012 through August 2013, "agreed, combined, and conspired to defraud the United States by obtaining, and aiding others to obtain, the payment and allowance of false, fictitious, and fraudulent claims." *Id.* ¶ 8. The indictment further charged that, "[a]s part of the scheme, the defendants filed with the IRS, or assisted in filing, federal income tax returns falsely claiming that education expenses ranging from $3,816 to $4,000 had been paid and the taxpayers were therefore eligible for the AOTC and a corresponding tax refund." *Id.* ¶ 9.[1]

On March 18, 2016, defendant pled guilty to one count of conspiracy to file false claims. Dkt. Nos. 139, 141. Defendant's plea stated, in part:

> I agree to pay full restitution for all the losses caused by all the schemes or offenses with which I was charged in this case, and I agree that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree to pay restitution in an amount to be set by the Court . . . .

Dkt. No. 139 ¶ 9. Co-defendants Choice, Virden, and Cobbins also pled guilty before trial. Dkt. Nos. 82, 175, 228.

On January 25, 2017, following his conviction by jury, Larkin was sentenced to 37 months of custody, three years of supervised release, and restitution of $184,798. Dkt. No. 321. On February 17, 2017, the Court sentenced Cobbins, defendant, and Virden. As to Cobbins and defendant, the government sought restitution of $184,798, joint and several, which it stated "is the tax loss to the government from the conspiracy of the tax loss remaining from the 280 false returns involved in the conspiracy . . . ." *See* Dkt. Nos. 335 at 4; *see also* Dkt. No. 337 at 5. As to Virden, the government sought $6,838 of restitution, which it stated was the tax loss agreed to by the parties, "which includes relevant conduct."[2] Dkt. No. 338 at 3. Cobbins was sentenced to five years of

---

[1] Due to the lengthy history of this case, the Court recites only those facts necessary to resolve the present motion. A more fulsome summary of the background of the case may be found in the Court's prior orders. *See, e.g.,* Dkt. Nos. 304, 453, 472.

[2] Virden pled guilty to one count of filing false claims but not to the conspiracy charge. Dkt. Nos. 174, 175. The plea agreements that Virden and defendant entered contained similar language. Virden's plea agreement stated, in relevant part:

> I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I understand that the Court will not consider my

2

probation and restitution of $184,798. Dkt. No. 351. Defendant was sentenced to three years of probation and restitution of $184,798. Dkt. No. 353. Virden was sentenced to two years of probation and restitution of $6,838. Dkt. No. 349.

On June 9, 2017, the Court sentenced Choice. The government sought restitution of $184,798, but Choice argued that her restitution should be apportioned and her financial circumstances considered under 18 U.S.C. § 3664(h). *See* Dkt. Nos. 392 at 11-12, 393 at 4-5. The Court agreed and sentenced Choice to one year of probation and restitution of $18,500. *See* Dkt. No. 400.

The following year, Cobbins petitioned for relief under 28 U.S.C. § 2255, claiming she was denied her Sixth Amendment right to effective assistance of counsel because at her plea hearing counsel for the government and counsel for the defense represented to the Court that her restitution would be apportioned, but the plea agreement she signed stated otherwise.[3] Dkt. No. 427. On

---

economic circumstances in determining the restitution amount. I agree to pay restitution in an amount to be set by the Court at the time of sentencing, but in no event less than $6,838.

*See* Dkt. No. 174 ¶ 9.

[3] At Cobbins's plea hearing, the following colloquy regarding restitution took place:

**The Court:** Will there be restitution, Ms. Stier?

**Ms. Stier [AUSA]:** Yes, Your Honor. That will be determined by the Court.

**The Court:** Do you have any idea how much?

**Ms. Stier:** Well, Your Honor, the -- the restitution will not be less than $2000. But we have to determine her role in the conspiracy to determine how much it is for all of the tax returns in which she had a role in [sic] within the conspiracy. We have not made that determination yet.

**The Court:** Is that right, Mr. Lowenstein?

**Mr. Lowenstein [Cobbins's counsel]:** Yes, that is exactly correct. There were several tax preparers who prepared taxes that's [sic] alleged to have been fraudulent. Ms. Cobbins' role in that was very limited, to only a certain amount of tax returns that she helped prepare. And so the restitution will be limited to the amount of loss, based on those returns.

Dkt. No. 408 at 5:23-6:15.

November 5, 2018, the Court vacated Cobbins's sentence and re-sentenced Cobbins to five years of probation and restitution of $18,500. Dkt. Nos. 470, 472, 473. In doing so, the Court found it reasonable under 18 U.S.C. § 3664(h) to resentence Cobbins "to the same sentence but with reduced restitution based on her limited role in the conspiracy and her ability to pay" and ordered that she pay restitution of approximately ten percent of the total loss to the IRS, or $18,500. Dkt. No. 472 at 13.

Now before the Court is defendant's motion for writ of audita querela or coram nobis, seeking a reduction of her restitution award on the basis of a legal defense arising after the entry of judgment. Dkt. No. 496.

**LEGAL STANDARD**

The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody. *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994); *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989). Specifically, the "writ provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" *Walgren*¸ 885 F.2d at 1420 (quoting *Yasui v. United States*, 772 F.2d 1496, 1498, 1499 & n.2 (9th Cir. 1985)).

Coram nobis relief is a "highly unusual remedy." *United States v. Riedl*, 496 F.3d 1003, 1004 (9th Cir. 2007). To qualify for coram nobis relief, four requirements must be satisfied: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case and controversy requirement of Article III; and (4) the error is of the most fundamental character. *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010); *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002); *Estate of McKinney v. United States,* 71 F.3d 779, 781-82 (9th Cir. 1995).

The writ of audita querela, a common law writ to afford relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition

of the judgment or the issue of the execution, may not be the vehicle for vacating a properly obtained conviction on purely equitable grounds. *Doe v. INS,* 120 F.3d 200, 204 (9th Cir. 1997). The writ, if it survives at all, is available only if a defendant has a legal defense or discharge arising subsequent to the underlying judgment. *Id.*

The difference between coram nobis and audita querela is one of timing, not substance. *Id.* at 203 n.4. Coram nobis is used to attack a judgment that was infirm at the time it was rendered for reasons that later come to light. Audita querela is used to attack a judgment that was correct when rendered, but later is rendered infirm by matters arising after its rendition. *See id.*

Like other common law writs, a writ of audita querela is available to fill the gaps of available postconviction remedies. *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001) (per curiam). A petition for a writ of audita querela is not available if the claims are cognizable in a motion under 28 U.S.C. § 2255, even if filing such a motion would be barred as successive. *Id*. at 1080; *Carrington v. United States*, 503 F.3d 888, 890 (9th Cir. 2007) (finding writ of audita querela could not be used to challenge sentence under federal sentencing guidelines based on new Supreme Court case even though § 2255 motion was no longer available because of statutory bar to second and successive § 2255 motions).

**DISCUSSION**

**I.    Writ of Audita Querela**

Defendant argues that the Court should grant a writ of audita querela because her judgment has become legally infirm since it was rendered. Defendant argues that the Court's use of 18 U.S.C. § 3664(h) to apportion the restitution of her co-defendants, after she herself was sentenced to the full restitution amount, constitutes legal error that the Court must now correct by lowering her restitution. The government asserts that the judgment was lawful when entered, that defendant is wrongly asking the Court to reconsider its decision to deny her request for apportionment that she made at sentencing,[4] and that defendant has waived her right to bring this motion.

---

[4] At defendant's sentencing, the following exchange occurred:

5

The Court agrees with the parties that judgment was correct when entered but finds defendant is correct that the judgment has been made infirm due to the judgments subsequently entered against her co-defendants. A writ of audita querela will therefore issue.

18 U.S.C. § 3664(h) states:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h). Defendant asserts that the Court erred because "[b]y its plain terms, Section 3664(h) provides the Court with a choice: it may impose full restitution on every co-defendant or it may apportion liability. The Court here erred by doing some of both . . . ." Dkt. No. 496 at 8.

The Court agrees with defendant's reading of the statute. The Court did not consider the application of Section 3664(h) to this case until the sentencing of Choice, who was sentenced last of all the defendants and several months after defendant had already received a judgment to pay full restitution. When the Court apportioned Choice's restitution according to Section 3664(h), it rendered infirm the restitution order as to defendant, for whom it had not considered apportionment under Section 3664(h).[5] This error was further compounded by the Court's resentencing Cobbins to a lower restitution amount in November 2018. While "[e]quities or gross injustice" alone do not

---

> **Mr. Blank [counsel for defendant]:** On the restitution, I raise just sort of glancingly, your Honor could apportion to her particular - - the clients that she helped, rather than having her be jointly and severally responsible for everyone. I don't have that number. I can provide it to you.
>
> **The Court:** I don't agree with you, so . . .
>
> **Mr. Blank:** I won't press it.

Dkt. No. 371 at 7:5-11. In addition, defendant's sentencing memorandum contained the following footnote: ". . . A more equitable restitution order might be limited to those clients personally assisted by Ms. Robinson. The Court may defer ruling on restitution until after imposing the rest of the sentence. . . ." *See* Dkt. No. 334 at 4 n.1.

[5] The Court expressed this concern at the time of Choice's sentencing: "I'm still concerned about equity in sentencing because of what we've done with the other folks in this case . . . ." *See* Dkt. No. 465 at 10:24-11:1.

provide a basis for granting a writ of audita querela, *see Doe*, 120 F.3d at 203, the Court finds the remedy appropriate in the unique circumstances of this case, in order to correct the Court's judgment that was later rendered infirm by the ordering of substantially different restitution amounts for Choice, Cobbins, and Virden.

The Court further finds that, considering the similar level of contribution to the victim's loss, and the economic circumstances of defendant, Cobbins, and Choice, defendant meets the requirements for apportionment pursuant to Section 3664(h). According to the figures in the Probation Presentence Reports, defendant filed 289 tax returns, similar to Choice's 236 returns. *See* Dkt. 331 at 8, 10. Defendant and Choice received similar training and directions from Larkin on tax preparation. *Id.* at 8-9. The Court has previously expressed that the extent of criminal activities committed by defendant, Choice, Cobbins, and Virden are not equivalent to Larkin's involvement and benefit. Dkt. No. 465 at 10:3-5 ("The thing that moves me, though, is that it was certainly wrong but it's not anything that these women made any real money off of."). Both defendant and Choice testified as government witnesses at Larkin's trial, and there was evidence that defendant and Choice did not initially know that the scheme was illegal.

Defendant's economic circumstances are also similar to those of Choice and Cobbins. At the time of sentencing, defendant had assets totaling $167, monthly income of $1,597, and total monthly cash flow of $447. Dkt. No. 331 at 17-18. By contrast, Cobbins had monthly cash flow of $1,040 and Choice of $1,722.26. Dkt. Nos. 359 at 30, 360 at 19. At the April 5, 2019 hearing, defendant represented that she currently lives in San Francisco and earns $1,360 every two weeks before taxes.

For both Choice and Cobbins, the Court ordered $18,500 of restitution, after applying Section 3664(h), finding that ten percent of the total loss was reasonable under the circumstances of this case, given their respective roles in the conspiracy and economic circumstsances. *See* Dkt. No. 392 at 11-12 (Choice Sent. Memo); Dkt. No. 472 at 13. For those same reasons, the Court finds restitution of $18,500, to be paid jointly and severally, is reasonable as to defendant here.

Because the Court will grant the writ of audita querela, the Court will not reach defendant's alternative argument regarding whether the Court should grant coram nobis relief.

## II. Waiver

The government argues that defendant waived her right to bring this motion "when she agreed to give up her right to appeal her conviction, the judgment, and any orders of the Court, as well as any aspect of her sentencing, including any orders relating to forfeiture and/or restitution . . .," as outlined in her plea agreement. Dkt. No. 500 at 10. Defendant disagrees, arguing, inter alia, that any waiver of her "right to challenge her restitution order is invalid because her plea agreement did not include an estimate of the amount of restitution she faced." Dkt. No. 501 at 3.

Generally, "[a] waiver of appellate rights 'is enforceable if (1) the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (citations omitted). The Ninth Circuit has "developed a special notice requirement for appeal waivers relating to restitution orders, holding that in order for that waiver to be valid a defendant must be 'given a reasonably accurate estimate of the amount of the restitution order to which he is exposed' at the time the defendant agrees to waive the appeal." *United States v. Lo,* 839 F.3d 777, 785 (9th Cir. 2016) (quoting *United States v. Tsosie*, 639 F.3d 1213, 1217 (9th Cir. 2011)).

In *Tsosie*, the Ninth Circuit found a defendant had not waived his right to appeal the restitution that the district court imposed, despite the fact that in his plea agreement he waived his right to appeal the imposition of sentence, which the parties agreed included the restitution order, and where the plea agreement stated that restitution would be determined by the court. 639 F.3d at 1216-17. Critically, the defendant's "plea agreement did not set forth any specific amount of restitution that Tsosie could be required to pay, or even any estimate of that amount." *Id.* at 1218. Accordingly, the appellate court found that "Tsosie 'lacked sufficient notice to waive his right to appeal the restitution award.'" *Id.* (*citing United States v. Gordon*, 393 F.3d 1044, 1050 (9th Cir. 2004)). The *Tsosie* court explained that, "[u]nlike terms of imprisonment, which have statutory maximums and are meted out by judges aided by the Sentencing Guidelines, there is neither a statutory limit nor any guidelines covering the amount of restitution orders . . . ." *Id.*

Here, defendant entered into a plea agreement containing the following language:

8

United States District Court
Northern District of California

> 4. I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court, as well as any aspect of my sentence, including any orders relating to forfeiture and/or restitution, except that I reserve my right to claim my counsel was ineffective.
>
> 5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve the right to claim my counsel was ineffective. I also agree not to seek relief under 18 U.S.C. § 3582.
>
> . . .
>
> 9. I agree to pay restitution for all the losses caused by all the schemes or offenses with which I was charged in this case, and I agree that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree to pay restitution in an amount to be set by the Court. . . .

Dkt. No. 139 ¶¶ 4-5, 9.

As in *Tsosie*, defendant's plea agreement did not set forth any specific amount of restitution she would be required to pay, or even estimate that amount. Nor is this a case where the factual detail found elsewhere in the plea agreement specified the total amount of the loss. *See Lo*, 839 F.3d at 782, 787 (finding the plea agreement gave a reasonably accurate estimate of the restitution order to which Lo was exposed where Lo agreed to the truth of the fact that he defrauded entities of at least $2.3 million and where the plea stated he would "pay restitution in an amount to be set by the Court, but in no event less than $1,700,000 to ANI and $46,189.54 to A.W. . ."). For this reason, the Court finds that defendant did not waive her right to appeal her restitution order.

Nor is the Court persuaded by the government's argument that "Robinson may also have waived her restitution claim by failing to raise it on direct appeal." *See* Dkt. No. 500 at 10. The government cites to an unpublished Ninth Circuit memorandum in which the appellate court stated in dicta that even assuming the pro se defendant's motion under 28 U.S.C. § 1331 challenging his restitution order could be construed as a petition for a writ of error coram nobis, "O'Neill waived any objection to the validity of [the] restitution order by failing to raise the issue on direct appeal." *See O'Neill v. United States*, 369 Fed. App'x 854 (9th Cir. 2010) *(citing United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008))*. The logic of *O'Neill* cannot be extended to a motion for a writ of audita querela, because the grounds for a writ of audita querela necessarily arise through error after the judgment has been rendered. In many instances, this presumably will occur after the

9

time to appeal has passed.[6]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for a writ of audita querela and VACATES the sentence imposed on February 17, 2017. The Court RE-SENTENCES defendant Krishell Robinson to the same sentence as previously imposed, with the exception of the amount of restitution. Defendant shall pay restitution of $18,500.00, jointly and severally. The U.S. Probation Office shall prepare an amended judgment.

**IT IS SO ORDERED**.

Dated: April 10, 2019

SUSAN ILLSTON
United States District Judge

---

[6] The Court also does not find persuasive the government's reliance on another unpublished Ninth Circuit case, *Evans v. United States*, 270 Fed. App'x 579 (9th Cir. 2008). *See* Dkt. No. 500 at 10. While there the appellate court affirmed the denial of a petition for writ of error coram nobis as a collateral attack that the defendant had waived, the unpublished memorandum disposition does not provide enough factual detail for the Court to discern its applicability to the facts of this case.

10